**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY,

Plaintiff,

vs.

THERESA L. PANZICA, THERESA L.
PANZICA, LLC, NINA BIRINDJIEVA,
VELITCHKA BONTCHEVA, PETYO
DIMITROV, MARIANA DIMINTROVA, JULIAN
DOBRINOV, HRISTO EDREV, SNEJANA
GALTCHEVA, STEFAN GISHIN, LATCHEZAR
GUISHIN, RADKA GUISHINA, VANIA
IORDANOVA, NEDCO IVANOV, YEVGENIY
KAPLUNSKIY, RADKA KUCAROVA,
TIHOMIR PENEV, STANISLAVA PENEVA,
TATYANA ROWE, VESSELA SLAVOVA,
SVETLOZAR STOYANOV, STEFAN
STOYKOV, LIOUBOV STOYKOVA,
KRASSIMIRE TCHERNEV, PETIA
TCHERNEVA, YORDAN TIMOV, ISABELLA
TIMOV AND GEORGI VRANSKI,

Defendants.

Case No.

Filed:: APRIL 16, 2008
08CV2177   J. N.
JUDGE DOW JR.
MAG. JUDGE COX

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u>

St. Paul Fire and Marine Insurance Company ("St. Paul"), by its undersigned attorneys, for

its Complaint against Theresa L. Panzica ("Panzica"), Theresa L. Panzica, LLC (the "Firm"),

Nina Birindjieva ("Birindjieva"), Velitchka Bontcheva, Petyo Dimitrov, Mariana Dimintrova,

Julian Dobrinov, Hristo Edrev, Snejana Galtcheva, Stefan Gishin, Latchezar Guishin, Radka

Guishina, Vania Iordanova, Nedco Ivanov, Yevgeniy Kaplunskiy, Radka Kucarova, Tihomir

Penev, Stanislava Peneva, Tatyana Rowe, Vessela Slavova, Svetlozar Stoyanov, Stefan Stoykov,

Lioubov Stoykova, Krassimire Tchernev, Petia Tcherneva, Yordan Timov, Isabella Timov and

Georgi Vranski, states as follows:

**Preliminary Statement**

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      Specifically, St. Paul seeks a declaration that St. Paul has no duty or obligation to defend or indemnify Panzica under an insurance policy issued to the Firm and Panzica, in connection with matters alleged in a lawsuit filed by Birendjieva and the remaining Defendants.

**Parties**

3.      St. Paul is an insurance company incorporated under the laws of the State of Minnesota and has its principal place of business in the State of Minnesota.  St. Paul is, therefore, a citizen of the State of Minnesota.

4.      The Firm is a limited liability company organized pursuant to the laws of the State of Illinois, with its principal place of business in the State of Illinois.  The Firm is, therefore, a citizen of the State of Illinois.

5.      Panzica an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

6.      Nina Birindjieva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

7.      Velitchka Bontcheva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

8.      Petyo Dimitrov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

9.      Mariana Dimintrova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

10.      Julian Dobrinov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

11.      Hristo Edrev is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

12.      Snejana Galtcheva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

13.      Stefan Gishin is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

14.      Latchezar Guishin is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

15.      Radka Guishina is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

16.      Vania Iordanova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

17.      Nedco Ivanov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

18.      Yevgeniy Kaplunskiy is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

19.      Radka Kucarova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

20.      Tihomir Penev is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

21.    Stanislava Peneva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

22.    Tatyana Rowe is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

23.    Vessela Slavova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

24.    Svetlozar Stoyanov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

25.    Stefan Stoykov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

26.    Lioubov Stoykova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

27.    Krassimire Tchernev is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

28.    Petia Tcherneva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

29.    Yordan Timov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

30.    Isabella Timov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

31.    Georgi Vranski is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

32.     The Defendants named in Paragraphs 6 through 31 are named solely as necessary parties against whom no relief is sought.

### Jurisdiction and Venue

33.     Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

34.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### The Lawsuit

35.     On February 8, 2008, Birindjieva initiated a lawsuit in the Circuit Court of Cook County, Illinois styled *Nina Birindjieva, et al. v. Svetlozar Dimitrov a/k/a/ Svetlozar Skulev, et al.*, case number 08 L 1473 (the "Lawsuit"). Panzica is named as a defendant in the Lawsuit. The Complaint filed in the Lawsuit (the "Complaint") is comprised of 508 pages and consists of 258 separate counts. It is, therefore, impractical to attach a paper copy of the Complaint, but paper or electronic copies of the Complaint will be made available to the Court, and can be made available to the parties upon their request.

36.     In the Complaint, Birindjieva and the other plaintiffs (collectively referred to herein as the "Underlying Plaintiffs") allege that the defendants, including Panzica, an attorney, engaged in a fraudulent scheme and conspiracy to defraud the Underlying Plaintiffs into agreeing to purchase 46 separate over-valued properties and to falsify documentation submitted to various lenders for the purpose of securing financing for the purchases.

37.     The Underlying Plaintiffs allege in the Complaint that Panzica violated the Illinois Consumer Fraud Act, engaged in a conspiracy and engaged in common law fraud with

5

respect to her involvement with some of the transactions relative to the sale and financing of the properties.

38.    Specifically, the Underlying Plaintiffs allege the following causes of action against Panzica, set forth in the following counts of the Complaint, and concerning the following property addresses:

| Count 55 | Consumer Fraud – 2527 W. Chicago Ave. #1 |
| Count 57 | Common Law Fraud – 2527 W. Chicago Ave. #1 |
| Count 59 | Conspiracy – 2527 W. Chicago Ave. #1 |
| Count 60 | Consumer Fraud – 2527 W. Chicago Ave. #2 |
| Count 62 | Common Law Fraud – 2527 W. Chicago Ave. #2 |
| Count 64 | Conspiracy – 2527 W. Chicago Ave. #2 |
| Count 65 | Consumer Fraud – 2527 W. Chicago Ave. #2 |
| Count 67 | Common Law Fraud – 2533 W. Chicago Ave. #1 |
| Count 69 | Conspiracy – 2533 W. Chicago Ave. #1 |
| Count 70 | Consumer Fraud – 2533 W. Chicago Ave. #2 |
| Count 72 | Common Law Fraud – 2533 w. Chicago Ave. #2 |
| Count 74 | Conspiracy – 2533 W. Chicago Ave. #2 |
| Count 75 | Consumer Fraud – 2535 W. Chicago Ave. #2 |
| Count 77 | Common Law Fraud – 2535 W. Chicago Ave. #2 |
| Count 79 | Conspiracy – 2535 W. Chicago Ave. #2 |
| Count 80 | Consumer Fraud – 2537 W. Chicago Ave. #1 |
| Count 82 | Common Law Fraud – 2537 W. Chicago Ave. #1 |
| Count 84 | Conspiracy – 2537 W. Chicago Ave. #1 |

| | |
|---|---|
| Count 85 | Consumer Fraud – 2537 W. Chicago Ave. #2 |
| Count 87 | Common Law Fraud – 2537 W. Chicago Ave. #2 |
| Count 89 | Conspiracy – 2537 W. Chicago Ave. #2 |
| Count 90 | Consumer Fraud – 2541 W. Chicago Ave. #2 |
| Count 92 | Common Law Fraud – 2541 W. Chicago Ave. #2 |
| Count 94 | Conspiracy – 2541 W. Chicago Ave. #2 |
| Count 95 | Consumer Fraud – 1633 N. Rockwell St. |
| Count 97 | Common Law Fraud – 1633 N. Rockwell St. |
| Count 99 | Conspiracy – 1633 N. Rockwell St. |
| Count 100 | Consumer Fraud – 3059 N. Elbridge Ave. |
| Count 102 | Common Law Fraud – 3059 N. Elbridge Ave. |
| Count 104 | Conspiracy – 3059 N. Elbridge Ave. |
| Count 105 | Consumer Fraud – 3345 N. Ridgeway Ave. |
| Count 107 | Common Law Fraud – 3345 N. Ridgeway Ave. |
| Count 109 | Conspiracy – 3345 N. Ridgeway Ave. |
| Count 110 | Consumer Fraud – 519 N. Oakley Blvd. |
| Count 114 | Conspiracy – 519 Oakley Blvd. |
| Count 115 | Consumer Fraud – 1643 N. Mozart St. |
| Count 117 | Common Law Fraud – 1643 N. Mozart St. |
| Count 119 | Conspiracy – 1643 N. Mozart St. |
| Count 120 | Consumer Fraud – 1915 N. Francisco Ave. #1 |
| Count 122 | Common Law Fraud – 1915 N. Francisco Ave. #1 |
| Count 124 | Conspiracy – 1915 N. Francisco Ave. #1 |

| Count 125 | Consumer Fraud – 3127 W. Belden Ave. |
| Count 127 | Common Law Fraud – 3127 W. Belden Ave. |
| Count 129 | Conspiracy – 3127 W. Belden Ave. |
| Count 130 | Consumer Fraud – 2835 W. Wellington Ave. #1 |
| Count 132 | Common Law Fraud – 2835 W. Wellington Ave. #1 |
| Count 134 | Conspiracy – 2835 W. Wellington Ave. #1 |
| Count 135 | Consumer Fraud – 2835 W. Wellington Ave. #2 |
| Count 137 | Common Law Fraud – 2835 W. Wellington Ave. #2 |
| Count 139 | Conspiracy – 2835 W. Wellington Ave. #2 |
| Count 140 | Consumer Fraud – 454 N. Oakley Blvd. #1 |
| Count 142 | Common Law Fraud – 454 N. Oakley Blvd. #1 |
| Count 144 | Conspiracy – 454 N. Oakley Blvd. #1 |
| Count 145 | Consumer Fraud – 1502 N. Artesian Ave. #1 |
| Count 147 | Common Law Fraud – 1502 N. Artesian Ave. #1 |
| Count 149 | Conspiracy – 1502 N. Artesian Ave. #1 |
| Count 150 | Consumer Fraud – 3056 N. Allen Ave. |
| Count 152 | Common Law Fraud – 3056 N. Allen Ave. |
| Count 154 | Conspiracy – 3056 N. Allen Ave. |
| Count 155 | Consumer Fraud – 3058 N. Elbridge Ave. |
| Count 157 | Common Law Fraud – 3058 N. Elbridge Ave. |
| Count 159 | Conspiracy – 3058 N. Elbridge Ave. |
| Count 160 | Consumer Fraud – 1646 N. Western Ave. |
| Count 162 | Common Law Fraud – 1646 N. Western Ave. |

| Count 164 | Conspiracy – 1646 N. Western Ave. |
| Count 165 | Consumer Fraud – 1723 N. Maplewood Ave. #1 |
| Count 167 | Common Law Fraud – 1723 Maplewood Ave. #1 |
| Count 169 | Conspiracy – 1723 Maplewood Ave. #1 |
| Count 170 | Consumer Fraud – 2417 W. McLean Ave. |
| Count 172 | Common Law Fraud – 2417 W. McLean Ave. |
| Count 174 | Conspiracy – 2417 W. McLean Ave. |
| Count 175 | Consumer Fraud – 2117 N. Stave St. |
| Count 177 | Common Law Fraud – 2117 N. Stave St. |
| Count 179 | Conspiracy – 2117 N. Stave St. |

The foregoing counts of the Complaint brought against Panzica will be collectively referred to herein as the "Panzica Counts".

39.    In Count 55 of the Complaint, the Underlying Plaintiffs allege that Panzica was engaged as an attorney for Mohammed Karkukly[1] to assist him in carrying out a fraudulent scheme by acting as his attorney-in-fact. (Comp., ¶243(A)). The Underlying Plaintiffs allege that Panzica engaged in deceptive and unfair actions in violation of the Consumer Fraud Act because she "knew that these properties were incomplete and that the transactions were shams designed to generate revenue through mortgage brokering fees as well as to relieve Karkukly of the financial responsibility for these properties." (Comp., ¶243(B)). The Underlying Plaintiffs further allege that Panzica intended that an Underlying Plaintiff rely on these deceptive acts, resulting in damages, including excessive mortgages, defense of foreclosure actions and the

---

[1] Karkukly is alleged to be one of Panzica's co-conspirators. Elsewhere in the Complaint, the Underlying Plaintiffs allege that, throughout the course of the fraudulent scheme, "all actions alleged to be taken by Karkukly were, on information and belief, executed by and through Karlucky's agents, Defendants A. Panzica and T. Panzica." (Comp, ¶40(T)).

resulting expense and harm to credit ratings. (Comp., ¶246, 259). The Underlying Plaintiffs

request rescission of the sale of the property, compensatory damages, attorney's fees and costs

incurred defending foreclosure action against the property, punitive damages and attorney's fees

and costs in prosecuting the Lawsuit. (Comp., p. 101).

40.    In Count 57 of the Complaint, the Underlying Plaintiffs allege that Panzica

engaged in common law fraud with respect to the subject property. (Comp., p. 103).

Specifically, they allege that Panzica forwarded disclosures relative to the subject property that

were materially false and known to be false by Panzica, who knew the true condition of the

property. (Comp., ¶279). The Underlying Plaintiffs request the same relief as requested under

Count 55. (Comp., p. 106).

41.    In Count 59 of the Complaint, the Underlying Plaintiffs allege that Panzica

engaged in a conspiracy with others, including Karkukly, to defraud an Underlying Plaintiff into

entering into the real estate and financing transactions and to conceal the fact that the fraudulent

scheme was occurring. (Comp. ¶325). The Underlying Plaintiffs again request the same relief as

requested under Count 55. (Comp., p. 113).

42.    In the other Panzica Counts, the Underlying Plaintiffs similarly allege that

Panzica engaged in the same unlawful conduct described above with respect to other properties

and seek similar relief against Panzica under the same three legal theories — violation of the

Illinois Consumer Fraud Act, common law fraud, and conspiracy.

## The St. Paul Policy

43.    St. Paul issued a Lawyers Professional Liability Policy No. 507JB150 (the

"Policy") to Panzica, with a policy period from June 15, 2007 to June 15, 2008. A true and

10

correct copy of the Policy is attached to this Complaint as Exhibit A and incorporated by reference.

44.    The Declarations included in the Policy list Panzica as the Named Insured.  The Policy was amended, by endorsement effective January 2, 2008, to substitute the Firm in place of Panzica as the Named Insured.

45.    The Policy's limits of liability are $1,000,000 each claim and $1,000,000 in the aggregate.

46.    The Policy's coverage grant provides, in part, as follows:

> We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made during the "policy period" and reported to us within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period.  Such "damages" must arise out of an error, omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services" for others by you or on your behalf….

> We will have the right and duty to defend any "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent.

\* \* \*

47.    The Policy provides that "you" and "your" refer to the "Named Insured" shown in the Declarations.

48.    The Policy defines the terms "Claim" and "Suit" in pertinent part as follows:

> "Claim" means a demand received by an insured for money or services alleging an error, omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services"" for others by you or on your behalf.

\* \* \*

> "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged….

\* \* \*

11

49.     The Policy defines "Damages" as follows:

"Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us.  "Damages" does not include punitive or exemplary damages, any multiple of compensatory damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

50.     The Policy defines "Professional Legal Services" as follows:

"Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator.  It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services.  It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business."

51.     The Policy contains Exclusion A, which provides that "[t]his insurance does not apply to 'claims'":

A.     Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured.  This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

a.     Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

b.     Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", immediately notifies us.

12

### Notice to St. Paul by the Firm

52.     On or about March 10, 2008, Panzica and the Firm notified St. Paul of the Lawsuit, furnished it with a copy of the Complaint and sought coverage from St. Paul under the Policy.

53.     On or about April 8, 2008, St. Paul responded to Panzica and the Firm and advised that, because the Policy does not cover the claims made in the Lawsuit, St. Paul would not provide any defense or indemnification for the Lawsuit.

### Count I
### (Declaratory Judgment: No Duty to Defend)

54.     St. Paul realleges paragraphs 1-53 above as if set forth fully herein.

55.     St. Paul has no duty or obligation under the Policy to defend Panzica in connection with the Lawsuit, for one or more of the following reasons:

      a.     The Policy does not apply to claims arising out of any dishonest, fraudulent, criminal or malicious act, error or omission committed by, at the direction of or with the knowledge of an insured.  The claims asserted in the Complaint all arise out of alleged dishonest and/or fraudulent conduct that is alleged to have been committed by Panzica, at her direction or with her knowledge;

      b.     The relief sought in the Lawsuit does not arise out of an error, omission or negligent act in the rendering of or failure to render "professional legal services," as that term is defined in the Policy, by or on behalf of Panzica; and

      c.     Punitive damages, equitable relief (including rescission of real estate transactions), and any multiple of compensatory damages sought in the Lawsuit, do not constitute "damages," as that term is defined in the Policy.

56.     An actual and justiciable controversy exists among the parties with respect to whether or not St. Paul has any duty or obligation under the Policy to defend Panzica in connection with the Lawsuit.

WHEREFORE, St. Paul respectfully requests that the Court adjudicate and declare the rights of the parties, and that the Court:

    a.    Declare that pursuant to the terms and conditions of the Policy, St. Paul has no obligation to defend Panzica in connection with the Lawsuit;

    b.    Declare that, pursuant to the terms and conditions of the Policy, St. Paul does not provide coverage for the Lawsuit;

    c.    Grant such other relief as the Court deems just and proper.

## Count II
### (Declaratory Judgment: No Duty to Indemnify)

57.    St. Paul realleges paragraphs 1-53 above as if set forth fully herein.

58.    St. Paul has no duty or obligation under the Policy to indemnify Panzica for any settlement entered into by her or for any judgment entered against her in connection with the Lawsuit for one or more of the following reasons:

    a.    The Policy does not apply to claims arising out of any dishonest, fraudulent, criminal or malicious act, error or omission committed by, at the direction of or with the knowledge of an insured. The claims asserted in the Complaint all arise out of alleged dishonest and/or fraudulent conduct that is alleged to have been committed by Panzica, at her direction or with her knowledge;

    b.    The relief sought in the Lawsuit does not arise out of an error, omission or negligent act in the rendering of or failure to render "professional legal services," as that term is defined in the Policy, by or on behalf of Panzica; and

    c.    Punitive damages, equitable relief (including rescission of real estate transactions), and any multiple of compensatory damages sought in the Lawsuit, do not constitute "damages," as that term is defined in the Policy; and

    d.    The allegations in the Lawsuit, if proven, otherwise do not give rise to coverage under the terms and conditions of the Policy.

59.    An actual and justiciable controversy exists among the parties with respect to whether or not St. Paul has any duty or obligation under the Policy to indemnify Panzica in connection with the Lawsuit.

WHEREFORE, St. Paul respectfully requests that the Court adjudicate and declare the rights of the parties, and that the Court:

a.    Declare that pursuant to the terms and conditions of the Policy, St. Paul has no obligation to indemnify Panzica in connection with the Lawsuit;

b.    Declare that, pursuant to the terms and conditions of the Policy, St. Paul does not provide coverage for the Lawsuit;

c.    Grant such other relief as the Court deems just and proper.

Dated: April 16, 2008

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

By: _____
One of its attorneys

Christopher J. Bannon (Atty. No.: 6196298)
Aronberg Goldgehn Davis & Garmisa
330 North Wabash, Suite 3000
Chicago, Illinois 60611
(312) 828-9600

477611.2

## DISCLOSURE STATEMENT

Pursuant to Local Rule 3.2, Plaintiff, St. Paul Fire and Marine Insurance Company submits this Disclosure Statement. The parent company of St. Paul Fire and Marine Insurance Company is The Travelers Companies, Inc. St. Paul Fire and Marine Insurance Company has no other affiliates, as that term is defined in Rule 32.

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY

By: _____
      One of Its Attorneys

08CV2177    J. N.
JUDGE DOW JR.
MAG. JUDGE COX

# EXHIBIT A



Travelers 1st Choice℠ for Lawyers

# LAWYERS PROFESSIONAL LIABILITY POLICY

A Custom Insurance Policy Prepared for:

## Theresa L. Panzica
## Attorney at Law
## 2510 West Irving Park Road, Unit A
## Chicago, IL 60618

LA000 Ed. 6-04   Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc.   All Right Reserved

**EXHIBIT A**

**POLICY FORM LIST**

Here's a list of all forms included in your
policy, on the date shown below.  These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Policy Form List | 40705 | 05-84 |
| Lawyers Professional Liability Policy Cover Page | LA000 | 06-04 |
| Lawyers Professional Liability Declarations Page | LA001 | 06-04 |
| Lawyers Professional Liability Coverage Form | LA003 | 06-04 |
| Nuclear Liability Exclusion | LA008 | 06-04 |
| Pollution Exclusion | LA009 | 06-04 |
| Illinois Amendatory Endorsement | LA027 | 09-06 |

| | | |
|---|---|---|
| **Name of Insured**<br>Theresa L. Panzica | **Policy Number** 507JB1150 | **Effective Date** 06/15/07 |
| | **Processing Date:** 06/18/2007 | |

Travelers 1st Choice℠ for Lawyers



## LAWYERS PROFESSIONAL LIABILITY
## DECLARATIONS PAGE

**POLICY NUMBER:** 507JB1150          **ISSUE DATE:** 06/18/2007

## THIS IS A CLAIMS-MADE POLICY.  PLEASE READ IT CAREFULLY.

## "Claims Expenses" Are Included Within The Limits Of Liability-"Claims Expenses" Will Reduce The Available Limits Of Liability

**INSURING COMPANY:**    St. Paul Fire and Marine Insurance Company, St. Paul, Minnesota

1.  **NAMED INSURED:**        Theresa L. Panzica
                              Attorney at Law

2.  **PRINCIPAL ADDRESS:**    2510 West Irving Park Road, Unit A
                              Chicago, IL 60618

3.  **POLICY PERIOD:**        From: 06/15/07     To: 06/15/08
                              **Inception**                **Expiration**
                              (12: 01 A. M. Standard Time at the Principal Address Stated Above)

4.  **LIMITS OF LIABILITY:**  $ 1,000,000   **EACH CLAIM**
                              $ 1,000,000  **POLICY AGGREGATE**
                              "Claims Expenses" are Included Within the Limits of Liability.

5.  **DEDUCTIBLE:**           $ 2,500   **EACH CLAIM**
                              $ N/A    **POLICY AGGREGATE**
                              Deductible Applies to Indemnity and "Claims Expenses".

6.  **PREMIUM:**              $ 1,346.00

7.  **RETROACTIVE DATE:**     06/15/2006

8.  **NOTICE REQUIRED TO BE GIVEN TO THE INSURER SHALL BE ADDRESSED TO:**

    St. Paul Fire and Marine Insurance Company, One Tower Square, 2 S1, Hartford, CT  06183-3004.

9.  **FORM AND ENDORSEMENT NUMBERS ATTACHING TO THIS POLICY AT ISSUANCE:**

    SEE ATTACHED FORMS LIST #40705

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements listed above (or attached after inception) and the Application and any applicable supplements or attachments.

NAME AND ADDRESS OF PRODUCER:

Protection Advantage, Inc.
13 Cornell Road
Latham, NY 12110

_____
Authorized Representative

In Witness Whereof, the Insurer has caused this policy to be signed by its President and Secretary and countersigned on the Declarations Page by a duly authorized agent of the Insurer.

President                                    Secretary

Travelers 1st Choice℠ for Lawyers

LAWYERS PROFESSIONAL LIABILITY COVERAGE
FORM

# LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

## NOTICE - THIS IS A CLAIMS-MADE POLICY WITH "CLAIMS EXPENSES" INCLUDED WITHIN THE LIMITS OF LIABILITY, UNLESS OTHERWISE NOTED.  PLEASE READ IT CAREFULLY.

THIS IS A CLAIMS-MADE POLICY.  IF THE POLICY CONTAINS A RETROACTIVE DATE, THEN THE POLICY PROVIDES NO COVERAGE FOR "CLAIMS" FOR ANY ERROR, OMISSION, NEGLIGENT ACT OR "PERSONAL INJURY" IN THE RENDERING OR FAILURE TO RENDER "PROFESSIONAL LEGAL SERVICES" COMMITTED PRIOR TO THE POLICY INCEPTION DATE OR THE RETROACTIVE DATE.  THIS POLICY APPLIES ONLY TO "CLAIMS" FIRST MADE AGAINST THE INSUREDS DURING THE "POLICY PERIOD", ANY SUBSEQUENT RENEWAL OF THE POLICY OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO US PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY "DAMAGES" OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS "CLAIMS EXPENSES".  ANY "CLAIMS EXPENSES" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.  WE SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY "CLAIM" AGAINST THE INSUREDS UNDER THIS POLICY.

COVERAGE FOR THE POLICY CEASES UPON THE POLICY TERMINATION DATE EXCEPT FOR THE BASIC EXTENDED REPORTING PERIOD, UNLESS A SUPPLEMENTAL EXTENDED REPORTING PERIOD IS PURCHASED.  THE LENGTH OF THE SUPPLEMENTAL EXTENDED REPORTING PERIOD THAT CAN BE SELECTED VARIES.  POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE SUPPLEMENTAL EXTENDED REPORTING PERIOD.  IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT, DURING THE FIRST SEVERAL YEARS OF THE CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE GENERALLY LOWER THAN OCCURRENCE RATES (ASSUMING THAT COVERAGE ON AN OCCURRENCE BASIS IS AVAILABLE FOR THE INSURANCE IN QUESTION), AND YOU MAY EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASE, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

Throughout the policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - INSURED.

Other words and phrases that appear in quotation marks have special meaning.   Refer to SECTION VII - DEFINITIONS.

## SECTION I - INSURING AGREEMENTS

We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made during the "policy period" and reported to us within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period. Such "damages" must arise out of an error, omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services" for others by you or on your behalf.  The error, omission, negligent act or "personal injury" must occur on or after the retroactive date stated in the Declarations, if any.

We will have the right and duty to defend any "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent.

We may also make such investigation and, with the written consent of an insured, such settlement of any "claim" or "suit" we deem appropriate.

If an insured does not agree with a settlement recommended by us, our Limit of Liability is reduced to the total of the amount for which the "claim" or "suit" could have been settled plus all "claims expenses" incurred up to the time we made our recommendation.

We will not be obligated to pay "damages" or "claims expenses" or to defend any "suit" after the applicable Limit of Liability has been exhausted by payment made by us towards "claims expenses", judgments and/or settlements.

In addition to the Limits of Liability, we will pay reasonable expenses incurred by the insured at our

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

request to assist us in the investigation of the "claim" or defense of the "suit", including actual loss of earnings up to $250 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured, subject to a maximum limit of $10,000 per "policy period".

In addition to the Limits of Liability, we will pay reasonable legal expenses incurred by the insured resulting from the defense of a proceeding by a regulatory or disciplinary official or agency to investigate charges of professional misconduct in the rendering of or failure to render "professional legal services" subject to a limit of $5,000 per "policy period".

## SECTION II - INSURED

Each of the following is an insured:

A.  The "Named Insured" shown in the Declarations; and

B.  Any person who was, is now or hereafter becomes a partner, officer, director, employee, principal, shareholder or member of any of the foregoing, whether named or not, but only while acting in the scope of his duties as such; and

C.  Any lawyer retained as Of Counsel by you, but only with respect to "professional legal services" performed for you or on your behalf or on behalf of a "predecessor in business"; and

D.  The estate, heirs, executors, administrators, and legal representatives of any insured in the event of such insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such insured would otherwise be provided coverage under this policy; and

E.  Any "predecessor in business" or person who was a partner, officer, director, employee, principal, shareholder or member of any "predecessor in business" who provided "professional legal services" on behalf of any "predecessor in business", provided a request for such coverage is made to us and accepted in writing prior to the inception of such coverage; and

F.  Any organization you newly acquire or form is an insured under this policy only when we provide you our written acceptance. This provision applies to any partner, officer, director, employee, principal, shareholder or member of such newly acquired or formed organization.

## SECTION III - LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the number of persons or organizations seeking

"damages" or the number of "claims" made, our liability is limited as follows:

A.  The amount stated in the Declarations as applicable to Each Claim is the most we will pay for all "damages" and "claims expenses" arising out of the same or related errors, omissions, negligent acts or "personal injury". For the purposes of determining our Limit of Liability, all "claims" arising out of the same or related errors, omissions, negligent acts or "personal injury" will be deemed to have been made when the first of such "claims" is made whether such demands are made against one or more insureds or whether such demands are made by one or more persons and will be treated as a single "claim".

B.  The amount shown in the Declarations as Policy Aggregate is the most we will pay for all "claims" to which this insurance applies.

## SECTION IV - DEDUCTIBLE

A.  Our obligation to pay "damages" and "claims expenses" under this policy applies only to the amount of "damages" and "claims expenses" which are in excess of the Deductible amount stated in the Declarations.

B.  The deductible amount applies to all "damages" and "claims expenses" incurred as the result of each "claim".

C.  The terms of the policy, including those with respect to our right and duty to defend "suits" and your duties in the event of a "claim", "suit" or circumstances which may give rise to a "claim", apply irrespective of the application of the deductible.

D.  We may pay any part or all of the deductible amount. Upon notification of the action we have taken, you shall reimburse us for such part of the deductible amount as we have paid. If we make a payment under the deductible and you do not reimburse us within 60 days, we will be entitled to recover reasonable attorney's fees incurred in collecting the amount we have paid.

E.  The Limits of Liability will not be reduced by the amount of any "damages" and/or "claims expenses" within the deductible amount.

## SECTION V - POLICY TERRITORY

This policy applies worldwide, provided that "claim" is made and "suit" is brought within the United States of America (including its territories or possessions), Puerto Rico or Canada.

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

## SECTION VI - EXCLUSIONS

This insurance does not apply to "claims":

A.  Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured.  This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

    1.  Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

    2.  Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", immediately notifies us.

B.  Arising out of  "bodily injury" or "property damage".

C.  Made by one insured under this policy against another insured under this policy.

D.  Alleging discrimination.

E.  Arising out of any insured's activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the insured is deemed to be a fiduciary solely by reason of "professional legal services" rendered with respect to any employee benefit plan.

F.  Based upon or arising out of any insured's capacity as:

    1.  A public official or employee of a governmental body, subdivision or agency thereof unless the insured is deemed to be such solely by virtue of rendering "professional legal services" to such governmental body, the remuneration for which services inures to the benefit of the "Named Insured"; or

    2.  An officer, director, partner, employee, principal, shareholder or member of any organization other than the "Named Insured" or any "predecessor in business".

G.  Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

H.  Arising out of:

1.  The promotion, sale or solicitation for sale of securities, real estate, or other investments by any insured; or

2.  Recommendations, representations, or opinions concerning specific investment advice by any insured or any person or organization referred to by any insured in connection with portfolio or trust account management, or the performance or nonperformance of securities, real estate, or other investments.

I.  Arising out of "professional legal services" performed for or on behalf of any organization other than the "Named Insured" or any "predecessor in business" at any time when those services were performed the organization was:

1.  Directly or indirectly controlled, operated or managed by any insured; or

2.  Owned by any insured, or by a spouse of any insured, in a percentage which exceeds:

    a.  5% of the issued and outstanding voting stock of the shares of a publicly traded organization; or

    b.  10% of the shares of a closely or privately held organization.

J.  Against any insured as a beneficiary or distributee of any trust or estate.

K.  Arising out of liability assumed by any insured under any indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an insured would have in the absence of such agreements.

L.  Arising out of the inability or failure to pay, collect, administer or safeguard funds held or to be held for others.

M.  Arising out of the alleged notarized certification or acknowledgment by any insured, in their capacity as a notary public, of a signature on a document which the insured did not witness being placed on the document.

N.  Arising solely out of an error, omission, negligent act or "personal injury" of a lawyer with whom you share or shared common office space or common office facilities and who is or was not an insured under this policy.

LA003 Ed. 6-04  Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc.  All Right Reserved

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

## SECTION VII - DEFINITIONS

A.  "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including the death of any person, resulting at any time.  "Bodily injury" includes mental anguish and emotional distress.

B.  "Claim" means a demand received by an insured for money or services alleging an error, omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

C.  "Claims Expense" means reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", "suit" or proceeding arising in connection therewith, if incurred by us or by an insured with our written consent.

D.  "Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us.  "Damages" does not include punitive or exemplary damages, any multiple of compensatory damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

E.  "Named Insured" means the person or entity as stated in the Declarations.

F.  "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   1.  False arrest, detention or imprisonment; or

   2.  Malicious prosecution; or

   3.  The wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

   4.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   5.  Oral or written publication of material that violates a person's right of privacy.

G.  "Policy Period" means the period from the inception date of this policy to the policy expiration date, as set forth in the Declarations, or the date of cancellation, whichever is earliest.

H.  "Predecessor in Business" means a law firm or practice which has undergone dissolution and at least 50% of the owners, officers, partners, principals or shareholders of the prior firm have joined you.

I.  "Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator.  It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services. It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business".

J.  "Property Damage" means:

   1.  Physical injury to tangible property, including all resulting loss of use of that property; or

   2.  Loss of use of tangible property that is not physically injured.

K.  "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged.  "Suit" includes:

   1.  An arbitration proceeding in which such "damages" are claimed and to which an insured must submit or does submit with our consent; or

   2.  Any other alternative dispute resolution proceeding in which "damages" are claimed and to which an insured submits with our consent.

## SECTION VIII - CONDITIONS

A.  Extended Reporting Periods

   1.  We will provide one or more Extended Reporting Periods, as described below, if we or you cancel or non renew this policy for any

© 2004 The St. Paul Travelers Companies, Inc. All Right Reserved

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

reason other than nonpayment of premium or deductible.

2. A Basic Extended Reporting Period is auto- matically provided without additional charge. Coverage is extended to include "claims" arising out of an error, omission, negligent act or "personal injury" which occurred prior to the end of the "policy period" and are otherwise covered by the policy, provided "claim" is first made against the insured during the "policy period" and reported to us within 60 days after the end of the "policy period". Any "claim" reported under this Basic Extended Reporting Period will be considered as having been made before the end of the "policy period". The Basic Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

3. You will also have the right to purchase a Supplemental Extended Reporting Period. You must give us a written request for a Supplemental Extended Reporting Period within 30 days after the termination of the policy. Upon payment of the additional premium, we will issue an endorsement providing a three (3) year or a five (5) year Supplemental Extended Reporting Period. This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions, negligent acts, or "personal injury" which occurred prior to the end of the "policy period" and are otherwise covered by the policy. The additional premium will be calculated according to the rates, rules and plan in effect at the time of termination.

4. If you become totally and permanently disabled or die during the "policy period", the period for reporting "claims" is extended until your disability ends or the executor or administrator is discharged.

   No additional premium will be charged for this extension nor will any premium be refunded.

   You or your estate must, within 60 days after the end of this policy, notify us in writing this coverage is desired.

   This Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

We also require:

a. Written proof of your permanent and total disability, including the date it happened, certified by your attending physician. You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

b. Written proof of the date of your death.

5. During a claims-made relationship and any Extended Reporting Period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any Extended Reporting Period after such affiliation has ceased for such person's covered errors, omissions, negligent acts, or "personal injury" during such affiliation.

   If this policy was issued to a corporation or partnership, we will provide Individual Extended Reporting Period coverage upon termination of coverage to any person covered under the policy if:

a. You have been placed in liquidation or bankruptcy or permanently cease operations; and

b. You do not purchase Extended Reporting Period coverage; and

c. The individual insured requests the Individual Extended Reporting Period coverage within 120 days of the end of the "policy period".

   Upon payment of the additional premium, we will issue an endorsement providing a three (3) year or a five (5) year Individual Extended Reporting Period. This endorsement will cover "claims" first made during the Individual Extended Reporting Period for errors, omissions, negligent acts, or "personal injury" which occurred prior to the end of the "policy period" and are otherwise covered by the policy. The additional premium will be calculated according to the rates, rules and plan in effect at the time of termination.

   We will not be obligated to provide any notice to any person of the availability of the Individual Extended Reporting Period coverage other than the first "Named Insured".

6. The Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. All "claims" first made

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

during the Supplemental Extended Reporting Period or the Individual Extended Reporting Period will be deemed to have been first made on the last day of the "policy period".

The Extended Reporting Periods will not reinstate or increase the Limits of Liability.

**B.** Reporting of Circumstances Which May Give Rise to a "Claim"

If, during the "Policy Period", any insured first becomes aware of a circumstance which may give rise to a "claim" (i.e., any act, error, omission or "personal injury" which might reasonably be expected to be the basis of a "claim" against any insured under this policy), the insured must give written notice in accordance with SECTION VIII - CONDITIONS C. - Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim". Any "claims" subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the "policy period".

**C.** Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim"

1. You and any other involved insured must see to it that we are notified in writing as soon as practicable and within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period of any circumstance which may give rise to a "claim". To the extent possible, written notice should include:

   a. The specific act, error, omission or "personal injury" including the date(s) thereof; and

   b. The "damages" that may reasonably result; and

   c. The date and circumstances by which any insured became aware of the error, omission, negligent act or "personal injury".

2. If a "claim" is received by any insured you must:

   a. Immediately record the specifics of the "claim" and the date received; and

   b. Notify us as soon as practicable.

   You and any other involved insured must see to it that we receive written notice of the "claim"

as soon as practicable and within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit"; and

   b. Authorize us to obtain records and other information; and

   c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of "damages" to which this insurance may also apply.

4. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

**D.** Transfer of Right of Recovery Against Others

If an insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. Such insured must do nothing after a "claim" is made or "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Failure to comply with this CONDITION will not in itself impair coverage, provided that the insured against whom "claim" is made or "suit" is brought did not personally impair rights of recovery or have knowledge of such impairment. Furthermore, upon receipt of such knowledge, such insured must immediately notify us that those rights have been impaired.

**E.** Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

**F.** Legal Action Against Us

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a "claim" or "suit" asking for "damages" from an insured; or

2. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

G. Bankruptcy

Bankruptcy or insolvency of any insured or of an insured's estate will not relieve us of our obligations under this policy.

H. Cancellation

1. The first "Named Insured" shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first "Named Insured" written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first "Named Insured's" last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the "policy period".

5. If this policy is cancelled, we will send the first "Named Insured" any premium refund due. If we cancel, the refund will be pro rata. If the first "Named Insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

I. Conformity to Statute

The terms of this policy which are in conflict with the statutes of the state wherein this policy is delivered are hereby amended to conform to such statute.

J. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual "Named Insured".

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have rights and duties, but only with respect to that property.

K. Other Insurance

This insurance is excess over any other valid and collectible insurance available to any insured.

L. Examination of your Books and Records

You must keep accurate records of the information we will need to compute your premium. You agree to allow us to examine and audit your financial books and records that relate to this insurance. We may do this within one hundred and eighty (180) days after expiration of this policy.

We may as soon as practicable following such audit, refund or credit your account for any return premium due you, or bill and make a good faith effort to collect any additional premium due us, as a result of such audit.

If you fail to cooperate with us in our attempt to conduct an audit, including your failure to return any questionnaires or self-audit worksheets, we shall have the right to not renew your policy upon expiration of the current policy due to our inability to establish your proper premium.

M. Representations

By accepting this policy, you agree:

1. The statements in the application which is attached hereto and forms a part of the policy are accurate and complete; and

2. We have issued this policy in reliance upon your representations.

N. Headings

The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms, conditions, exclusions and limitations of this policy.

## LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements attached hereto, Application and any applicable supplements.

In return for payment of the premium, we agree with the "Named Insured" to provide the insurance afforded by this policy. That insurance will be provided by the Company indicated as the INSURING COMPANY in the Declarations.

© 2004 The St. Paul Travelers Companies, Inc. All Right Reserved

LAWYERS PROFESSIONAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# NUCLEAR LIABILITY EXCLUSION

A. This insurance does not apply to "damages" or "claims expenses" for "claims" or "suits" arising out of the failure to discover or disclose the presence or existence of a "nuclear facility", "nuclear material", "spent fuel" or "waste".

B. As used in this endorsement:

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

1. Any "nuclear reactor"; or

2. Any equipment or device designed or used for the (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel," or (c) handling, processing or packaging "waste"; or

3. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of  or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of 235; or

4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of  the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

© 2004 The St. Paul Travelers Companies, Inc.  All Right Reserved                     Page 1 of 1

LAWYERS PROFESSIONAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTION EXCLUSION

This insurance does not apply to "damages" or "claims expenses" for "claims" or "suits" arising out of:

A.  The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants" or asbestos; or

B.  The failure to discover or disclose the existence or amount of "pollutants" or asbestos; or

C.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with A or B above; or

D.  Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants" or asbestos; or

E.  Any "claim" or "suit" by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants" or asbestos.

As used in this endorsement:

"Pollutant" means any solid, liquid, gaseous or thermal irritant, contaminant or toxic or hazardous substance or any substance which may, does or is alleged to affect adversely the environment, property, persons or animals, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

LA009 Ed. 6-04  Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc.  All Right Reserved

LAWYERS PROFESSIONAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## ILLINOIS - AMENDATORY ENDORSEMENT

I.   **SECTION VII - DEFINITIONS** C., "Claims Expense", is deleted in its entirety and replaced with the following:

C.   "Claims Expense" means reasonable and necessary fees charged by (an) attorney(s) designated by us and all other fees, costs and expenses resulting from the adjustment, appeal, defense and investigation of a "claim", "suit" or proceeding arising in connection therewith, if incurred by us, not including salary charges or expenses of our employees or officials, or fees and expenses of independent adjusters.

II.   Item 1 of **SECTION VIII - CONDITIONS**, A.., Extended Reporting Periods, is deleted in its entirety and replaced with the following:

1.   We will provide one or more Extended Reporting Periods, as described below, if we or you cancel or nonrenew this policy for any reason, including nonpayment of premium.

III.   Item 3 of **SECTION VIII - CONDITIONS**, A.., Extended Reporting Periods, is deleted in its entirety and replaced with the following:

3.   You will also have the right to purchase a Supplemental Extended Reporting Period within 30 days after the termination of the policy. Upon payment of the additional premium, we will issue an endorsement providing a three (3) year, a five (5) year, a six (6) year, or a seven (7) year Supplemental Extended Reporting Period.  This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy.  The additional premium will be 150% of the expiring annual premium for 3 years, 175% of the expiring annual premium for 5 years, 200% of the expiring annual premium for 6 years and 210% of the expiring annual premium for 7 years.

IV.   Item 5 of **SECTION VIII - CONDITIONS**, A., Extended Reporting Periods, is deleted in its entirety and replaced with the following:

5.   During a claims-made relationship and any Extended Reporting Period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any Extended Reporting Period after such affiliation has ceased for such person's covered errors, omissions, negligent acts, or "personal injury" during such affiliation.

If this policy was issued to a corporation or partnership, we will provide Individual Extended Reporting Period coverage upon termination of coverage to any person covered under the policy if:

a.   You have been placed in liquidation or bankruptcy or permanently cease operations; and

b.   You do not purchase Extended Reporting Period coverage; and

c.   The individual insured requests the Individual Extended Reporting Period coverage within 120 days of the end of the "policy period".

Upon payment of the additional premium, we will issue an endorsement providing a three (3) year, a five (5) year, a six (6) year, or a seven (7) year Individual Extended Reporting Period.  This endorsement will cover "claims" first made during the Individual Extended Reporting Period for errors, omissions, negligent acts, or "personal injury" which occurred prior to the end of the "policy period" and are otherwise covered by the policy.  The additional premium will be 150% of the expiring annual premium for 3 years, 175% of the expiring annual premium for 5 years, 200% of the expiring annual premium for 6 years and 210% of the expiring annual premium for 7 years.

© 2006 The St. Paul Travelers Companies, Inc. All Right Reserved

**LAWYERS PROFESSIONAL LIABILITY**

We will not be obligated to provide any notice to any person of the availability of the Individual Extended Reporting Period overage other than the first "Named Insured".

V.  **SECTION VIII - CONDITIONS** H., Cancellation, is deleted in its entirety and replaced by the following:

H.  Cancellation

1. The first "Named Insured" in Item 1 of the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to all "Named Insureds" in Item 1 of the Declarations, and the agent or broker, at the last addresses known to us, written notice stating the reason for cancellation.

    a. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

    b. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

        (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

        (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. The policy was obtained through a material misrepresentation.

    c. Any insured has violated any of the terms and conditions of the policy;

    d. The risk originally accepted has measurably increased;

    e. Certification of the Director of Insurance of the loss of reinsurance by the insured that provided coverage to us for all or a substantial part of the underlying risk insured; or

    f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

If this policy is cancelled we will send the first "Named Insured" in Item 1 of the Declarations any premium refund due. If we cancel, the refund will be pro rata. If the first "Named Insured" cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

The effective date and hour of cancellation stated in the notice of cancellation shall become the end of the "policy period". Proof of mailing will be sufficient proof of notice. Payment or tender of unearned premium is not a condition of cancellation.

VI.  **SECTION VIII - CONDITIONS** K., Other Insurance, is deleted in its entirety and replaced by the following:

K.  Other Insurance

If a "claim" covered by this policy is also covered by other insurance, we will pay only the proportion of the "claim" that the Limit of Liability of this policy bears to the total amount of insurance applicable to the "claim".

VII.  **SECTION VIII - CONDITIONS** is amended by adding the following:

O.  Nonrenewal

If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

1. The first "Named Insured" in Item 1 of the Declarations;

2. And a copy to the broker, if known to us, or the agent of record.

Even if we do not comply with these terms, this policy will terminate:

    a. On the expiration date, if:

        (1) The first "Named Insured" fails to perform any of the obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

        (2) We have indicated our willingness to renew this policy to you or your representative; or

        (3) You have notified us or our agent that renewal of this policy is not wanted.

© 2006 The St. Paul Travelers Companies, Inc.  All Right Reserved

**LAWYERS PROFESSIONAL LIABILITY**

    b.  On the effective date of any other insurance replacing this policy.

P.  Mailing of Notices

Cancellation and nonrenewal notices will be mailed by us to all "Named Insureds" in Item 1 of the Declarations, and a copy to the agent or broker, at the last mailing addresses known to us.  Proof of mailing will be sufficient proof of notice.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

LA027 Rev. 9-06 Printed in U.S.A.
© 2006 The St. Paul Travelers Companies, Inc. All Rights Reserved



## COMPLAINT NOTICE

Should any dispute arise about your premiums or about a claim that you have filed, the address of The St. Paul Travelers to be used for a consumer complaint is:

Complaint Department
The St. Paul Travelers Companies, Inc.
Ste 2000
200 North LaSalle Street
Chicago IL 60601-0000

The address of the consumer complaint division of the Department of Insurance of Illinois is:

Public Service Division
Department of Insurance
State of Illinois
320 West Washington Street
Springfield IL 62767

40758 Rev. 4-89
© 1989 The St. Paul Travelers Companies, Inc. All Rights Reserved                                        Page 1 of 1



**IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION**

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

© 2005 The St. Paul Travelers Companies, Inc. All Rights Reserved



## HOW TO REPORT LOSSES, CLAIMS, OR POTENTIAL CLAIMS TO US

Reporting new losses, claims, or potential claims to us promptly can be critical. It helps us to resolve covered losses or claims as quickly as possible and often reduces their overall cost. Prompt reporting:

' better protects your interests;

' helps us to try to resolve losses or claims more quickly and to everyone's satisfaction - yours, any claimant's and ours; and

' often reduces the overall cost of a loss or claim - losses or claims reported more than five days after they happen cost on average 35% more than those reported earlier.

To report losses, claims, or potential claims to us, we can be contacted easily and quickly by fax, U S mail, or email.

| FAX |
|---|

Use this number to report a loss, claim, or potential claim by fax toll free.

1-888-460-6622

| U S MAIL |
|---|

Use this address to report a loss, claim, or potential claim by U S Mail.

Bond-FPS Claims Department

Travelers

Mail Code NB08M

385 Washington Street

Saint Paul, Minnesota 55102

| EMAIL |
|---|

Use this address to report a loss, claim, or potential claim to us by email.

Pro.E&O.Claim.Reporting@SPT.com

This is a general description of how to report a loss, claim, or potential claim under your policy. This description does not replace or add to the terms of your policy. Your policy alone determines the scope of your insurance protection. Please read it carefully for complete information on your coverage. You should contact your agent or broker if you have any questions about your coverage.

NP060 Rev. 12-06
© 2006 The St. Paul Travelers Companies, Inc. All Rights Reserved



**LAWYERS PROFESSIONAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Policy Change
Number: 01

| POLICY NUMBER: | POLICY CHANGES EFFECTIVE: | COMPANY: |
|---|---|---|
| 507JB1150 | 01/02/08 | St Paul Fire and Marine Ins Co |

| NAMED INSURED: | AUTHORIZED REPRESENTATIVE: |
|---|---|
| Theresa L. Panzica, LLC | Patricia Wilson |

**COVERAGE PARTS AFFECTED:**

Firm Name

### CHANGES

**Firm Name is hereby Amended to read:**
**Theresa L. Panzica, LLC**

*Patricia A. Wilson*
———————————————————
Authorized Representative Signature

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**