**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ST. PAUL FIRE AND MARINE INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **THERESA L. PANZICA, THERESA L. PANZICA, LLC,** ) | |
| **NINA BIRINDJIEVA, VELITCHKA BONTCHEVA,** ) | |
| **PETYO DIMITROV, MARIANA DIMINTROVA,** ) | |
| **JULIAN DOBRINOV, HRISTO EDREV, SNEJANA** ) | |
| **GALTCHEVA, STEFAN GISHIN, LATCHEZAR GUISHIN,** ) | |
| **RADKA GUISHINA, VANIA IORDANOVA,** ) | **NO. 08 CV 2177** |
| **NEDCO IVANOV, YEVGENIY KAPLUNSKIY, RADKA** ) | |
| **KUCAROVA, TIHOMIR PENEV, STANISLAVA PENEVA,** ) | **JUDGE DOW JR.** |
| **TATYANA ROWE, VESSELA SLAVOVA, SVETLOZAR** ) | |
| **STOYANOV, STEFAN STOYKOV, LIOUBOV** ) | **MAG.  COX** |
| **STOYKOVA, KRASSIMIRE TCHERNEV, PETIA** ) | |
| **TCHERNEVA, YORDAN TIMOV, ISABELLA TIMOV,** ) | |
| **AND GEORGI VRANSKI,** ) | |
| ) | |
| **Defendants.** ) | |

**ANSWER OF**
**THERESA L. PANZICA AND THERESA L. PANZICA, LLC,**
**TO COMPLAINT FOR DECLARATORY JUDGMENT**

Defendants Theresa L. Panzica and Theresa L. Panzica, LLC ("Panzica"), by their attorney George B. Collins of Collins, Bargione & Vuckovich, answer the Complaint for Declaratory Judgment of St. Paul Fire and Marine Insurance Company ("St. Paul"), as follows:

## Preliminary Statement

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**    Admitted.

2.      Specifically, St. Paul seeks a declaration that St. Paul has no duty or obligation to defend or indemnify Panzica under an insurance policy issued to the Firm and Panzica, in connection with matters alleged in a lawsuit filed by Birendjieva and the remaining Defendants.

**ANSWER:**    Admitted as to the stated purpose of St. Paul.

## Parties

3.      St. Paul is an insurance company incorporated under the laws of the State of

1

Minnesota and has its principal place of business in the State of Minnesota. St. Paul is, therefore, a citizen of the State of Minnesota.

**ANSWER:**    Admitted.

4.    The Firm is a limited liability company organized pursuant to the laws of the State of Illinois, with its principal place of business in the State of Illinois. The Firm is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Admitted.

5.    Panzica an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Admitted.

6.    Nina Birindjieva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

7.    Velitchka Bontcheva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

8.    Petyo Dimitrov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

9.    Mariana Dimintrova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

10.    Julian Dobrinov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

11.    Hristo Edrev is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

12.    Snejana Galtcheva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**    Panzica has no knowledge as to the person alleged.

13.     Stefan Gishin is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

14.     Latchezar Guishin is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

15.     Radka Guishina is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

16.     Vania Iordanova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

17.     Nedco Ivanov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

18.     Yevgeniy Kaplunskiy is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

19.     Radka Kucarova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

20.     Tihomir Penev is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

21.     Stanislava Peneva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

22.     Tatyana Rowe is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

23.     Vessela Slavova is an individual who is domiciled in the State of Illinois and is,

therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

24.     Svetlozar Stoyanov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

25.     Stefan Stoykov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

26.     Lioubov Stoykova is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

27.     Krassimire Tchernev is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

28.     Petia Tcherneva is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois,

**ANSWER:**     Panzica has no knowledge as to the person alleged.

29.     Yordan Timov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

30.     Isabella Timov is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

31.     Georgi Vranski is an individual who is domiciled in the State of Illinois and is, therefore, a citizen of the State of Illinois.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

32.     The Defendants named in Paragraphs 6 through 31 are named solely as necessary parties against whom no relief is sought.

**ANSWER:**     Panzica has no knowledge as to the person alleged.

4

## Jurisdiction and Venue

33.     Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:**     Admitted.

34.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ANSWER:**     Admitted.

## The Lawsuit

35.     On February 8, 2008, Birindjieva initiated a lawsuit in the Circuit Court of Cook County, Illinois styled *Nina Birindjieva, et al. v. Svetlozar Dimitrov a/k/a/ Svetlozar Skulev, et al.*, case number 08 L 1473 (the "Lawsuit"). Panzica is named as a defendant in the Lawsuit. The Complaint filed in the Lawsuit (the "Complaint") is comprised of 508 pages and consists of 258 separate counts. It is, therefore, impractical to attach a paper copy of the Complaint, but paper or electronic copies of the Complaint will be made available to the Court, and can be made available to the parties upon their request.

**ANSWER:**     Admitted that the Complaint was filed. As of this date, Panzica has not been served.

36.     In the Complaint, Birindjieva and the other plaintiffs (collectively referred to herein as the "Underlying Plaintiffs") allege that the defendants, including Panzica, an attorney, engaged in a fraudulent scheme and conspiracy to defraud the Underlying Plaintiffs into agreeing to purchase 46 separate over-valued properties and to falsify documentation submitted to various lenders for the purpose of securing financing for the purchases.

**ANSWER:**     Denied that this is a full and correct description of the 508-page complaint. The

Complaint attacks the practices of Panzica in closing real estate transactions, and is,

therefore, a complaint (in some counts) for professional negligence.

37.     The Underlying Plaintiffs allege in the Complaint that Panzica violated the Illinois Consumer Fraud Act, engaged in a conspiracy and engaged in common law fraud with respect to her involvement with some of the transactions relative to the sale and financing of the properties.

**ANSWER:**     Admitted, as to certain paragraphs of the Complaint.

38.     Specifically, the Underlying Plaintiffs allege the following causes of action against Panzica, set forth in the following counts of the Complaint, and concerning the following property addresses:

Count 55     Consumer Fraud — 2527 W. Chicago Ave. #1
Count 57     Common Law Fraud — 2527 W. Chicago Ave. #1
Count 59     Conspiracy — 2527 W. Chicago Ave. #1
Count 60     Consumer Fraud — 2527 W. Chicago Ave. #2

| | |
|---|---|
| Count 62 | Common Law Fraud — 2527 W. Chicago Ave. #2 |
| Count 64 | Conspiracy — 2527 W. Chicago Ave. #2 |
| Count 65 | Consumer Fraud — 2527 W. Chicago Ave. #2 |
| Count 67 | Common Law Fraud — 2533 W. Chicago Ave. #1 |
| Count 69 | Conspiracy — 2533 W. Chicago Ave. #1 |
| Count 70 | Consumer Fraud — 2533 W. Chicago Ave. #2 |
| Count 72 | Common Law Fraud — 2533 w. Chicago Ave. #2 |
| Count 74 | Conspiracy — 2533 W. Chicago Ave. #2 |
| Count 75 | Consumer Fraud — 2535 W. Chicago Ave. #2 |
| Count 77 | Common Law Fraud — 2535 W. Chicago Ave. #2 |
| Count 79 | Conspiracy — 2535 W. Chicago Ave. #2 |
| Count 80 | Consumer Fraud — 2537 W. Chicago Ave. #1 |
| Count 82 | Common Law Fraud — 2537 W. Chicago Ave. #1 |
| Count 84 | Conspiracy — 2537 W. Chicago Ave. #1 |
| Count 85 | Consumer Fraud — 2537 W. Chicago Ave. #2 |
| Count 87 | Common Law Fraud — 2537 W. Chicago Ave. #2 |
| Count 89 | Conspiracy — 2537 W. Chicago Ave. #2 |
| Count 90 | Consumer Fraud — 2541 W. Chicago Ave. #2 |
| Count 92 | Common Law Fraud — 2541 W. Chicago Ave. #2 |
| Count 94 | Conspiracy — 2541 W. Chicago Ave. #2 |
| Count 95 | Consumer Fraud — 1633 N. Rockwell St. |
| Count 97 | Common Law Fraud — 1633 N. Rockwell St. |
| Count 99 | Conspiracy — 1633 N. Rockwell St. |
| Count 100 | Consumer Fraud — 3059 N. Elbridge Ave. |
| Count 102 | Common Law Fraud — 3059 N. Elbridge Ave. |
| Count 104 | Conspiracy — 3059 N. Elbridge Ave. |
| Count 105 | Consumer Fraud — 3345 N. Ridgeway Ave. |
| Count 107 | Common Law Fraud — 3345 N. Ridgeway Ave. |
| Count 109 | Conspiracy — 3345 N. Ridgeway Ave. |
| Count 110 | Consumer Fraud — 519 N. Oakley Blvd. |
| Count 114 | Conspiracy — 519 Oakley Blvd. |
| Count 115 | Consumer Fraud — 1643 N. Mozart St. |
| Count 117 | Common Law Fraud — 1643 N. Mozart St. |
| Count 119 | Conspiracy — 1643 N. Mozart St. |
| Count 120 | Consumer Fraud — 1915 N. Francisco Ave. #1 |
| Count 122 | Common Law Fraud — 1915 N. Francisco Ave. #1 |
| Count 124 | Conspiracy — 1915 N. Francisco Ave. #1 |
| Count 125 | Consumer Fraud — 3127 W. Belden Ave. |
| Count 127 | Common Law Fraud — 3127 W. Belden Ave. |
| Count 129 | Conspiracy — 3127 W. Belden Ave. |
| Count 130 | Consumer Fraud — 2835 W. Wellington Ave. #1 |
| Count 132 | Common Law Fraud — 2835 W. Wellington Ave. #1 |
| Count 134 | Conspiracy — 2835 W. Wellington Ave. #1 |
| Count 135 | Consumer Fraud — 2835 W. Wellington Ave. #2 |
| Count 137 | Common Law Fraud — 2835 W. Wellington Ave. #2 |
| Count 139 | Conspiracy — 2835 W. Wellington Ave. #2 |
| Count 140 | Consumer Fraud — 454 N. Oakley Blvd. #1 |
| Count 142 | Common Law Fraud — 454 N. Oakley Blvd. #1 |
| Count 144 | Conspiracy — 454 N. Oakley Blvd. #1 |
| Count 145 | Consumer Fraud — 1502 N. Artesian Ave. #1 |
| Count 147 | Common Law Fraud — 1502 N. Artesian Ave. #1 |
| Count 149 | Conspiracy — 1502 N. Artesian Ave. #1 |

Count 150    Consumer Fraud — 3056 N. Allen Ave.
Count 152    Common Law Fraud — 3056 N. Allen Ave.
Count 154    Conspiracy — 3056 N. Allen Ave.
Count 155    Consumer Fraud — 3058 N. Elbridge Ave.
Count 157    Common Law Fraud — 3058 N. Elbridge Ave.
Count 159    Conspiracy — 3058 N. Elbridge Ave.
Count 160    Consumer Fraud — 1646 N. Western Ave.
Count 162    Common Law Fraud — 1646 N. Western Ave.
Count 164    Conspiracy — 1646 N. Western Ave.
Count 165    Consumer Fraud — 1723 N. Maplewood Ave. #1
Count 167    Common Law Fraud — 1723 N. Maplewood Ave. #1
Count 169    Conspiracy — 1723 Maplewood Ave. #1
Count 170    Consumer Fraud — 2417 W. McLean Ave.
Count 172    Common Law Fraud — 2417 W. McLean Ave.
Count 174    Conspiracy — 2417 W. McLean Ave.
Count 175    Consumer Fraud — 2117 N. Stave St.
Count 177    Common Law Fraud — 2117 N. Stave St.
Count 179    Conspiracy — 2117 N. Stave St.

The foregoing counts of the Complaint brought against Panzica will be collectively referred to herein as the "Panzica Counts".

**ANSWER:**    Admitted that the numbered counts are labeled by the plaintiff in the Complaint.

39.    In Count 55 of the Complaint, the Underlying Plaintiffs allege that Panzica was engaged as an attorney for Mohammed Karkukly[1] to assist him in carrying out a fraudulent scheme by acting as his attorney-in-fact. (Comp., ¶243(A)). The Underlying Plaintiffs allege that Panzica engaged in deceptive and unfair actions in violation of the Consumer Fraud Act because she "knew that these properties were incomplete and that the transactions were shams designed to generate revenue through mortgage brokering fees as well as to relieve Karkukly of the financial responsibility for these properties." (Comp., ¶243(B)). The Underlying Plaintiffs further allege that Panzica intended that an Underlying Plaintiff rely on these deceptive acts, resulting in damages, including excessive mortgages, defense of foreclosure actions and the resulting expense and harm to credit ratings. (Comp., ¶246, 259). The Underlying Plaintiffs request rescission of the sale of the property, compensatory damages, attorney's fees and costs incurred defending foreclosure action against the property, punitive damages and attorney's fees and costs in prosecuting the Lawsuit. (Comp., p. 101).

**ANSWER:**    Denied that this precis fully describes Count 55. Theresa Panzica's function was, as

the daughter of Anthony Panzica, an attorney, to close real estate transactions. As the

result of her work closing transactions she is accused of having actual knowledge of

the condition of the property and is alleged to have the duty of explaining that

---

[1]Karkukly is alleged to be one of Panzica's co-conspirators. Elsewhere in the Complaint, the Underlying Plaintiffs allege that, throughout the course of the fraudulent scheme, "all actions alleged to be taken by Karkukly were, on information and belief, executed by and through Karlucky's agents, Defendants A. Panzica and T. Panzica." (Comp, ¶40(T)).

condition to purchasers (underlying plaintiffs). It is a question, arising from her

actions as a lawyer, whether or not it was within her duties as a lawyer to explain the

condition of the property to a purchaser. The underlying plaintiff claims she had a

duty to describe condition arising from her position as the seller's lawyer. Her legal

malpractice carrier, St. Paul, should defend Theresa Panzica against liability for any

failure to act within the standards of care and disclose condition of property to

purchasers.

40.     In Count 57 of the Complaint, the Underlying Plaintiffs allege that Panzica engaged
in common law fraud with respect to the subject property. (Comp., p. 103). Specifically, they allege
that Panzica forwarded disclosures relative to the subject property that were materially false and
known to be false by Panzica, who knew the true condition of the property. (Comp., ¶279). The
Underlying Plaintiffs request the same relief as requested under Count 55. (Comp., p. 106).

**ANSWER:**     Denied that this precis is full and complete. The allegation that Theresa Panzica did

not forward information is an allegation of a deviation from a standard of care by a

lawyer, and is, and should be, covered by the St. Paul policy.

41.     In Count 59 of the Complaint, the Underlying Plaintiffs allege that Panzica engaged
in a conspiracy with others, including Karkukly, to defraud an Underlying Plaintiff into entering into
the real estate and financing transactions and to conceal the fact that the fraudulent scheme was
occurring. (Comp. ¶325). The Underlying Plaintiffs again request the same relief as requested under
Count 55. (Comp., p. 113).

**ANSWER:**     Denied that this precis is full and complete. The allegation of the underlying case,

insofar as it is an allegation of fact, describes a situation in which a seller's attorney

allegedly did not give information to a purchaser which the standards of the

profession require. Eliminating the adjectives used by the underlying plaintiffs, the

facts alleged describe professional negligence.

42.     In the other Panzica Counts, the Underlying Plaintiffs similarly allege that Panzica
engaged in the same unlawful conduct described above with respect to other properties and seek
similar relief against Panzica under the same three legal theories violation of the Illinois Consumer
Fraud Act, common law fraud, and conspiracy.

**ANSWER:**     Denied, in that the various counts of the Complaint are different, but admitted that

many are similar. The "reallegations" and amendments to prior allegations are

confusing. But, the basic facts alleged are that Theresa Panzica had a professional

8

duty to disclose the condition of each property to each purchaser, and that she failed

in that duty. The adjectival cover for those allegations do not change the facts

alleged.

## The St. Paul Policy

43.     St. Paul issued a Lawyers Professional Liability Policy No. 507JB150 (the "Policy") to Panzica, with a policy period from June 15, 2007 to June 15, 2008. A true and correct copy of the Policy is attached to this Complaint as Exhibit A and incorporated by reference.

**ANSWER:**     Admitted.

44.     The Declarations included in the Policy list Panzica as the Named Insured. The Policy was amended, by endorsement effective January 2, 2008, to substitute the Firm in place of Panzica as the Named Insured.

**ANSWER:**     Admitted.

45.     The Policy's limits of liability are $1,000,000 each claim and $1,000,000 in the aggregate.

**ANSWER:**     Admitted.

46.     The Policy's coverage grant provides, in part, as follows:

We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made during the "policy period" and reported to us within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period. Such "damages" must arise out of an error, omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services" for others by you or on your behalf....

We will have the right and duty to defend any "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent.

* * *

**ANSWER:**     Admitted that the policy so provides. It is the position of Panzica that the suit is

groundless and false, but that she is entitled to a defense from St. Paul.

47.     The Policy provides that "you" and "your" refer to the "Named Insured" shown in the Declarations.

**ANSWER:**     Admitted.

48.     The Policy defines the terms "Claim" and "Suit" in pertinent part as follows:

"Claim" means a demand received by an insured for money or services alleging an error,

9

omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

\*\*\*

"Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged....

\*\*\*

**ANSWER:** Admitted that the policy contains this language.

    49. The Policy defines "Damages" as follows:

"Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us. "Damages" does not include punitive or exemplary damages, any multiple of compensatory damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

**ANSWER:** Admitted that the policy contains this language.

    50. The Policy defines "Professional Legal Services" as follows:

"Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator. It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services, It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business."

**ANSWER:** Admitted that the policy contains this language, some of which is not applicable to

    this case.

    51. The Policy contains Exclusion A, which provides that "[t]his insurance does not apply to 'claims'":

A. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured. This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

a. Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

b. Such insured, upon receipt of notice or knowledge of such knowingly wrongful act,

error, omission or "personal injury", immediately notifies us.

**ANSWER:**    Admitted that the Policy contains this language. Theresa Panzica contends that she

did not commit any dishonest, fraudulent, criminal or malicious act, but is being

sued, with those adjectival allegations, for closing real estate transactions in which

it is claimed that she had a duty to know the condition of the property and to disclose

that condition to the buyer. She is entitled to a defense, that should be able to

demonstrate that she had no duty to know condition of property, and that she was not

required to disclose condition of property.

## Notice to St. Paul by the Firm

52.    On or about March 10, 2008, Panzica and the Firm notified St. Paul of the Lawsuit, furnished it with a copy of the Complaint and sought coverage from St. Paul under the Policy.

**ANSWER:**    Admitted. A copy of the suit was obtained from Anthony Panzica, but Theresa

Panzica has not, as yet, been served. The suit was forwarded immediately upon

knowledge of its existence.

53.    On or about April 8, 2008, St. Paul responded to Panzica and the Firm and advised that, because the Policy does not cover the claims made in the Lawsuit, St. Paul would not provide any defense or indemnification for the Lawsuit.

**ANSWER:**    Admitted.

## Count I
## (Declaratory Judgment: No Duty to Defend)

54.    St. Paul realleges paragraphs 1-53 above as if set forth fully herein.

**ANSWER:**    These Defendants re-allege paragraphs 1-53 hereof.

55.    St. Paul has no duty or obligation under the Policy to defend Panzica in connection with the Lawsuit, for one or more of the following reasons:

a.    The Policy does not apply to claims arising out of any dishonest, fraudulent, criminal or malicious act, error or omission committed by, at the direction of or with the knowledge of an insured. The claims asserted in the Complaint all arise out of alleged dishonest and/or fraudulent conduct that is alleged to have been committed by Panzica, at her direction or with her knowledge;

b.    The relief sought in the Lawsuit does not arise out of an error, omission or negligent act in

11

the rendering of or failure to render "professional legal services," as that term is defined in the Policy, by or on behalf of Panzica; and

c.      Punitive damages, equitable relief (including rescission of real estate transactions), and any multiple of compensatory damages sought in the Lawsuit, do not constitute "damages," as that term is defined in the Policy.

**ANSWER:**    Denied, except as to the exclusion of punitive damages. Theresa Panzica seeks a

defense of these groundless claims arising out of her closing of real estate

transactions and a defense to claims of compensatory damages.

56.     An actual and justiciable controversy exists among the parties with respect to whether or not St. Paul has any duty or obligation under the Policy to defend Panzica in connection with the Lawsuit.

**ANSWER:**    Admitted.

WHEREFORE, Panzica prays that this Court declare that St. Paul owes to Theresa Panzica

a defense of this cause, and indemnity for any loss by reason of compensatory damages.

## Count II
### (Declaratory Judgment: No Duty to Indemnify)

57.     St. Paul realleges paragraphs 1-53 above as if set forth fully herein.

**ANSWER:**    These Defendants re-allege paragraphs 1-53 hereof.

58.     St. Paul has no duty or obligation under the Policy to indemnify Panzica for any settlement entered into by her or for any judgment entered against her in connection with the Lawsuit for one or more of the following reasons:

a.      The Policy does not apply to claims arising out of any dishonest, fraudulent, criminal or malicious act, error or omission committed by, at the direction of or with the knowledge of an insured. The claims asserted in the Complaint all arise out of alleged dishonest and/or fraudulent conduct that is alleged to have been committed by Panzica, at her direction or with her knowledge;

b.      The relief sought in the Lawsuit does not arise out of an error, omission or negligent act in the rendering of or failure to render "professional legal services," as that term is defined in the Policy, by or on behalf of Panzica; and

c.      Punitive damages, equitable relief (including rescission of real estate transactions), and any multiple of compensatory damages sought in the Lawsuit, do not constitute "damages," as that term is defined in the Policy; and

d.      The allegations in the Lawsuit, if proven, otherwise do not give rise to coverage under the terms and conditions of the Policy.

**ANSWER:**   Denied. St. Paul owes a duty to defend.

59.   An actual and justiciable controversy exists among the parties with respect to whether or not St. Paul has any duty or obligation under the Policy to indemnify Panzica in connection with the Lawsuit.

**ANSWER:**   Admitted.

WHEREFORE, Panzica prays that this Court declare that St. Paul has a duty to defend

Theresa Panzica against this suit.

s/s _____ George B. Collins _____ _____ ___
Attorney for Defendants
Theresa L. Panzica and Theresa L. Panzica, LLC

George B. Collins
COLLINS, BARGIONE & VUCKOVICH
One North LaSalle St., #300
Chicago, IL 60602
(312) 372-7813